JONATHAN BOYCE v. WILLIAM B. CUTTER, TREASURER OF
THE CITY OF MUSKEGON.

*Taxes—Assessment of forest products—Replevin—Illegal levy—
Estoppel.*

1. Replevin lies for property seized to satisfy a void tax assessed against the owner.
2. In this case, without deciding *where* the logs in question should have been assessed, it is held that no part of the same were situated *at* or destined *for* the city of Muskegon at the time of their assessment, and that the fact that the owner, when before the board of review, so stated, does not estop him from showing that he meant *North* Muskegon, where the logs were contracted to be manufactured into lumber, which contract necessarily fixed their destination.

Error to Muskegon. (Dickerman, J.) Argued May 16, 1888. Decided June 8, 1888.

Replevin. Plaintiff brings error. Reversed. The facts are stated in the opinion.

*Smith, Nims, Hoyt & Erwin,* for appellant.

*Bunker & Carpenter,* for defendant.

[The points of counsel are so fully stated in the opinion, with citation of authority, that their restatement is omitted. —REPORTER.]

LONG, J. This is an action of replevin brought to recover possession of a quantity of lumber seized by the defendant, as treasurer of the city of Muskegon, for the satisfaction of taxes levied against the plaintiff in said city for the year 1886. It appeared upon the trial that the value of the lumber was about $4,000, and the amount of taxes, including fees and interest, at the time of the trial, $1,673.69.

The plaintiff is, and at the time the assessment was made was, a lumberman residing in the city of Grand Rapids, in this State. On the second Monday in April, 1886, he had about 12,000,000 feet of logs in the Muskegon river and its tributaries. Of these about 8,000,000 feet were in Denton creek, Denton township, Roscommon county, Mich.; between 3,000,000 and 4,000,000 feet were in a stream called the "Cut," in the same county, but not in Denton township; and about 150,000 feet were scattered along the river. He had in Denton township a camp, an office, and a store for the purpose of selling goods to men working for him on said logs. Early in March, 1886, he made a contract with the firm of Gow, Majo & Co., whose mill is situated at North Muskegon, to saw these logs during the season of 1886 at $1.50 per M. These logs were subsequently brought down to North Muskegon, and there sawed, the most of them by Gow, Majo & Co., some of them by the Ducy Lumber Company, at North Muskegon, and about one-half million feet of shingle logs were taken to Billinghurst mill, in the city of Muskegon, and there sawed. The lumber seized for the tax, and described in the writ of replevin in this case, was piled on the dock of Gow, Majo & Co., at North Muskegon, and not within the corporate limits of the city of Muskegon.

The plaintiff, having been assessed by the assessor of the city of Muskegon for personal estate, logs, $40,000, in April, 1886, appeared before the board of review, at their meeting on July 22, 1886, and filed a written protest with the board, as follows:

"*To the Board of Review of the Assessment Roll made by the Assessor of the City of Muskegon for the Year* 1886: I observe on the assessment roll now before you for review the following assessment made by the assessor of the city against me, namely, ' J. Boyce, personal estate, logs, $40,000.' I respectfully represent:

"1. That on the second Monday of April, 1886, I was, and for more than a year continuously prior to that date had

been, a resident of the city of Grand Rapids, Mich., and still reside there.

"2. That on the second Monday of April, 1886, I had no goods, chattels, or personal property, including logs, within the city of Muskegon, or elsewhere in the State of Michigan, subject to assessment upon said roll, except a few logs which were in the Muskegon river, in transit, destined for the city of Muskegon, which logs did not exceed 150,000 feet, or thereabouts, in quantity, and $1,000 in value.

"I therefore respectfully protest against said assessment, and insist that the same shall be corrected accordingly.

"*Muskegon, July* 22, 1886.            JONATHAN BOYCE."

This protest was duly verified by the plaintiff, and, as appeared from the records of the board of review, the following proceedings were had:

"Jonathan Boyce appeared before the board of review, filed written statement of protest, and also made the following statement under oath, examined by Assessor Ryan:

"*Q.* Where was the balance of your logs situated, apart from these 150,000 feet that you speak of as being in the river?

"*A.* They were in the rollways, and in a creek called 'Denton Creek,' in the township of Denton, Roscommon county, most of them.

"*Q.* How many were in Denton creek?

"*A.* Somewhere in the neighborhood of eight millions.

"*Q.* How many in the rollways?

"*A.* That included what was in the rollways.

"*Q.* How many did you have elsewhere?

"*A.* Well, I had somewhere in the neighborhood of three millions piled up in the stream called the 'Cut,' between Houghton and Higgins lakes. They go from there into the Muskegon river, through Houghton lake.

"*Q.* And the logs in Denton creek and those in the 'Cut' would make about 11,000,000 feet?

"*A.* Yes; I think all the logs amounted to about twelve millions; you can see it at the booming company's office. They were reported there,—all I had altogether.

"*Q.* Was your log-mark on those logs that you speak of in the creek and Houghton lake?

"*A.* Yes, sir.

"*Q.* And that mark is recorded here in the booming company's office?

" *A.* Yes, sir.

" *Q.* So it was calculated that they should come here to Muskegon?

" *A.* Well, that was the calculation; they couldn't go anywhere else, really.

Mr. Erwin, the plaintiff's attorney, being present with him before the board of review, then examined the plaintiff before said board as follows:

" *Q.* Whether or not you have been assessed on the logs elsewhere?

" *A.* I have.

" *Q.* Where?

" *A.* In the township of Denton, Roscommon county.

" *Q.* For all the logs that were in that township and that you have mentioned?

" *A.* For all the logs I have mentioned, and all the horses and everything I had.

" *Q.* For this year?

" *A.* For this year."

Witness was then asked by the assessor if he had taken advice to have them assessed there, and responded—

"No, sir. The assessor came around there, and claimed the right to assess them. I had an office and a farm there, and he claimed the right to assess them, and did so."

It also appears that on the trial the plaintiff offered to show that he paid all the taxes so assessed in Roscommon county on said property, to the amount of $955.15, for the year 1886. Plaintiff was called as a witness upon the trial in his own behalf, and, being examined by his counsel, testified as follows:

"*Q.* With the exception of this one-half million of cull logs, which you say were sawed at Billinghurst mill in 1886, where have your logs been sawed for three years?

" *A.* At North Muskegon; none in the city of Muskegon."

The plaintiff also called as a witness James Gow, of the firm of Gow, Majo & Co., who gave evidence that in March, 1886, he made a contract with plaintiff to saw all his logs at

the mill of Gow, Majo & Co., at North Muskegon. The logs were to be taken to North Muskegon, and, if his firm could not saw the whole amount, he (Gow) was to get them sawed at other mills for plaintiff. It appears that the logs were taken to North Muskegon, and sawed there, except shingle logs, which were sawed at Billinghurst mill.

The plaintiff was then called as a witness, and his attention called by his counsel to the statements made by him before the board of review, and especially to the following question from the board, and his answer thereto:

" *Q.* So it was calculated that they should come here to Muskegon?

" *A.* Well, that was the calculation; they couldn't go anywhere else, really."

The witness was then asked by his counsel:

" *Q.* What did you understand by that question, and what did you intend by that answer?"

This was objected to by defendant's counsel as immaterial, irrelevant, and incompetent.

" *By the Court.* The only question is whether he should say what he meant, or whether that should be left for the jury, with the full knowledge as to all the facts and the situation, and as to the fact where his logs were destined and were to be sawed, etc. I am inclined to think it would hardly be competent to go to the extent that you ask now. I will sustain the objection.

" *Q.* What name is given to lumbermen and lumber mills on Muskegon lake?

" *A.* They are all classed as Muskegon lumbermen."

The testimony being closed, the circuit judge instructed the jury as follows:

" In this case, gentlemen of the jury, your verdict will be that you find that the plaintiff had a general ownership in the property, but that the defendant had a lien upon the property in the sum of $1,673.69."

The verdict and judgment being entered for defendant for

said sum, under the direction of the court, the plaintiff brings the case into this Court by writ of error.

Eight errors are assigned, seven upon the rulings of the trial court in the admission of and rejection of evidence.

The eighth error is assigned upon the charge of the court, and, as we view the case, it will not be necessary to discuss the other assignments.

It is claimed by the defendant that the assessment was valid; that the property assessed consisted of forest products, and that the place of assessment was therefor fixed by the fourth subdivision of section 11, Act No. 153, Laws of 1885, which provides that—

" Personal property of non-residents of the State and all forest products owned by residents or non-residents shall be assessed to the owner or the person having control thereof in the township or ward where the same may be, except that where such property is in transit to some place within the State, it shall be assessed in such place: *Provided,* All forest products in transit on the second Monday in April and thereafter found in the waters or streams of this State, shall be held to have a place of destination at the sorting grounds of the rafting or driving agents or booming company nearest the mouth of such stream, unless the contrary shall be made to appear by the owner or party having the same in charge: *Provided, further,* that all lumber, logs, etc., that may be piled, or left in any yard, etc., or any other place, shall not be deemed in transit, but shall be assessed to the owner thereof in the township or ward where the same may be situated at the time provided by law for taking any assessment "

It was also claimed by the defendant that the logs in question had been cut and hauled and put into the Muskegon river and its tributaries, where they were on the second Monday of April, 1886 ; that a small portion were scattered along the river between Houghton lake and Muskegon, and were destined for Muskegon ; that all of them were afterwards floated down the river, and delivered at the village of North Muskegon, where they were sawed ; and that if all were in transit on

the second Monday of April, all were assessable at their place of destination; that if this does not conclusively appear, at least it does appear that some of these were assessable at Muskegon, and, the board of review having passed upon the question, their decision is final, and cannot be attacked in the courts in an action of replevin.

That section 19 of the act above cited provides for what causes such tax may be set aside. This section provides that—

" Upon the completion of said roll, and its indorsement in the manner aforesaid, the same shall be conclusively presumed by all courts and tribunals to be valid, and shall not be set aside except for causes hereinafter mentioned."

The causes mentioned are found in section 90 of the act, which are:

"1. That no law authorizes such tax.

"2. That the person or persons appointed to decide whether a tax shall be raised under a given law have acted without jurisdiction, or have not imposed the tax in question.

" 3. That the person or property assessed was exempt from the taxation in question, or was not assessed.

" 5. That the supervisor or board of review, in assessing a person or property for taxation, or in the apportionment of the tax to the person or property in question, acted fraudulently.

" If any such illegality, omission, or fraud affects the amount of the tax only, the tax shall be sustained so far as the same is just and legal."

It is claimed by the defendant that none of the reasons set forth in this section have been shown to exist by the testimony in the case, and that the undisputed facts show conclusively jurisdiction to levy an assessment against the plaintiff of at least $1,000, and the treasurer had the right to collect the tax on an assessment of that amount, and for that purpose he was entitled to the possession of the property, and consequently to a judgment for the tax, fees, and inter-

est; and in support of this proposition counsel cite *Hill v. Wright*, 49 Mich. 229 (13 N. W. Rep. 528).

The defendant's position would undoubtedly be true, and the case above cited would control, if we find any authority whatever in the assessing officer to levy the tax. If the tax, however, was laid without authority of law as to any part of it, then the action could be had in replevin, and the plaintiff repossess himself of his property. *Le Roy v. Railway*, 18 Mich. 233; *Travers v. Inslee*, 19 Id. 98. But the record is conclusive that he was not assessed for said 150,000 feet, but was assessed for his entire stock of logs for the year 1886.

Counsel also insist that the entire assessment is valid; that the board of review could only act on such facts as they had before them; and that their action was based on the statement of the plaintiff himself, and which statement shows:

1. That the property consisted of forest products.
2. That it was in transit.
3. That it was destined for the city of Muskegon.

The circuit judge evidently acted upon the theory that the plaintiff having appeared before the board of review, and made the statement there claimed, he must now be estopped from asserting the real facts, that the whole of the logs were destined for North Muskegon, and not for the city of Muskegon. It was in this view of the case that he excluded the answer of the plaintiff to the question put to him by his counsel as to what he understood by the question from the board of review, "So it was calculated that they should come here to Muskegon?" and his answer that "it was the calculation." The explanation which plaintiff sought to make to this was that what he understood by the question, and intended by his answer, was that all lumbermen and lumber mills on Muskegon lake are classed as Muskegon lumbermen, or as Muskegon lumber mills. This the court afterwards permitted the plaintiff to show, although not

in explanation of his testimony given before the board of review.

In view of the contract made in March, 1886, by plaintiff with Gow, Majo & Co., of North Muskegon, proved not only by the plaintiff himself, but by Mr. Gow, of that firm, and which fact is wholly uncontradicted on the trial, and the further fact that all the logs were afterwards taken to Gow, Majo & Co., and most of them sawed, and those sawed at the Ducy Lumber Company's mill were procured to be sawed by Gow, Majo & Co., under their contract at $1.50 per M., as well as the fact that even the small amount of cull shingle logs which were afterwards taken to Billinghurst mill, which is situated in Muskegon, were a part of the logs specified in the Gow, Majo & Co. contract, it is conclusively shown that not one of the logs in controversy in April, 1886, was destined for the city of Muskegon; and the fact that on July 22, 1886, when the plaintiff appeared before the board of review, he may have said inadvertently that they were so destined, would not estop him from showing the facts of the case; and the fact that in his protest he admitted that he had some amount of logs at the city of Muskegon on July 22, would not estop him from showing the facts that in the March previous his contract was made with Gow, Majo & Co., as this contract necessarily fixed and determined the destination of the logs, and it appears conclusively in the case that this destination was never changed.

The protest made by the plaintiff on July 22, 1886, to the board of review, cannot be construed as giving consent to an assessment. He was there protesting that the city of Muskegon had no right to assess him, and the statements made in the protest would not give the assessor jurisdiction or bind the plaintiff. *Blood v. Sayre,* 17 Vt. 609; *Pease v. Whitney,* 8 Mass. 93; Cooley, Const. Lim. 398; *Preston v. Boston,* 12 Pick. 8; *Freeman v. Kenney,* 15 Id. 44; *Lyman v. Fiske,* 17 Id. 231.

The logs were properly assessable at Denton, where they were on the second Monday of April, 1886, or at North Muskegon, the place, under the contract made in March with Gow, Majo & Co., to which they were destined, as there was no testimony showing where the sorting grounds of the Muskegon Booming Company were.

The plaintiff offered to show that he had paid the tax assessed against them at Denton to the sum of $955.15.

We need not, upon this record, discuss or determine where the property should have been assessed. No one would claim that they should be assessed more than once, or that their owner should pay taxes upon them more than once. We think the facts stated in the record show conclusively that the assessor of the city of Muskegon had no jurisdiction to assess any portion of the property. It was not situated there at the time the assessment was made, and that city was not its place of destination. The plaintiff was not a resident of the city of Muskegon, but resided in the city of Grand Rapids. The action of replevin was properly brought, and the verdict and judgment should have been for the plaintiff, under the facts as they appear upon this record.

The judgment of the court below must be reversed, and a new trial ordered, with costs.

The other Justices concurred.